CRIPPEN *against* HUDSON, impleaded.
WILBER and another *against* THE SAME.

An action in the nature of a creditor's bill cannot be sustained upon a judgment recovered in a justice's court, where the only execution returned unsatisfied was issued by the justice.

The judgment should be docketed in the county clerk's office and an execution against the real as well as the personal property of the debtor returned unsatisfied, to authorize such action. The same rule in this respect exists under the Code which prevailed in the late court of chancery.

To entitle a judgment creditor to maintain an action in the nature of a bill in equity to remove fraudulent incumbrances from property liable to sale on execution, he must have a specific lien upon the property.

A creditor of an insolvent copartnership must acquire a legal or an equitable lien upon property of the firm, to authorize him to invoke the equitable powers of the court in its administration.

ACTIONS commenced in the supreme court in September, 1851. The complaint in the case first entitled stated that the defendants, C. Bigelow & Wright were, on the 9th of July, 1851, copartners in the mercantile business, and, as such, indebted to the plaintiff in the sum of about $90; for which amount he recovered judgment against them on the 12th of that month in a justice's court. That on the said 9th of July, C. Bigelow executed a chattel mortgage and an assignment, by which he mortgaged to the defendant, Milton Bigelow, his undivided half of all the goods and chattels owned by the firm to secure to him the payment of about $1000, and assigned to him his title and interest in and to the books and choses in action of the firm, to secure him for endorsements made for said C. Bigelow; and that

on the same day, Wright, the other copartner, executed a similar mortgage to the other defendants, Hudson, Wilsey and Robbinson, of his undivided half of the copartnership goods and chattels, to secure to them the payment of about $1000, and also an assignment of his interest in the books and choses in action of the firm, to secure them against demands for which they had become his surety. The complaint further alleged, that at the time the mortgages and assignments were executed, C. Bigelow & Wright were insolvent, both as copartners and individuals, and owned no property, real or personal, of any considerable value, either as partners or in their individual rights, except that which was covered by the mortgages and assignments. That on the 12th of said July, an execution was issued by the justice on the judgment recovered in favor of the plaintiff, and delivered to a constable of the county where the defendants resided and had done business, who by virtue thereof levied upon a portion of the property covered by the mortgages sufficient in value to have satisfied the execution; and that prior to the commencement of this action, and on the 11th of September, 1851, the constable returned the execution to the justice with his return thereon, stating the levy upon the property, and that it was afterwards taken from his possession and sold by virtue of the chattel mortgages; and that, except such property, the defendants in the execution had none with which it could be satisfied. The complaint further stated that Bigelow & Wright were not, at the time of executing the mortgages and assignments, indebted as copartners to the persons to whom they were executed or either of them. That the defendants, who were mortgagees and assignees, were collecting the notes and accounts of the firm and appropriating the proceeds to their own use; and that they had taken possession of the goods and chattels of the firm covered by the mortgages and disposed of the same. That at the time the mortgages and assignments were executed, Bigelow & Wright were indebted as

Crippen *against* Hudson.

copartners to sundry persons in an amount equal to tho value of the copartnership property, which fact, as well as their insolvency, was then known to the other defendants; and that the plaintiff had required the defendants, who were mortgagees and assignees as above stated, to pay the copartnership debts out of the proceeds of the copartnership property, which had been transferred to them by the mortgages and assignments to pay and secure the individual debts of the copartners, which they refused to do. That on the 21st of July, 1851, the copartners, Bigelow & Wright, executed to the other defendants an instrument which recited the separate assignments above mentioned of the choses in action of the firm, and directed that the residue of the proceeds of the choses in action, after paying the debts specified in the assignments made by them severally, should be applied to the payment of copartnership debts. The complaint charged that the mortgages and assignments and the instrument last above mentioned were executed with intent to hinder, delay and defraud the plaintiff and the other copartnership creditors, and that the same were illegal and void; and prayed that the same be declared void as against the plaintiff and the other creditors of the firm; that a receiver of the property of the firm be appointed, and that the defendants, the mortgagees and assignees, be adjudged to account to the receiver for the property and effects of the firm acquired by them under the mortgages and assignments, and that the proceeds be applied by the receiver to the payment of the plaintiff's judgment and the other debts owing by the firm, or that the plaintiff have such other relief as might be proper.

The defendant Hudson demurred to the complaint, assigning, among other causes of demurrer, that the complaint did not state facts sufficient to constitute a cause of action, or to entitle the plaintiff to the relief demanded.

The cause was heard at a general term of the court held in the 6th district, and judgment rendered in favor of the

defendant on the demurrer. The plaintiff appealed to this court.

In the cause secondly above entitled, the complaint was upon two judgments, recovered in a justice's court, amounting in the aggregate to over $100. In other respects, the complaint and proceedings in the supreme court were the same as in the cause first entitled.

*E. E. Ferry*, for the appellant.

*L. Tremain*, for the respondent.

JOHNSON, J., delivered the opinion of the court.

The first question in these cases is, whether the suits can be sustained as creditors' bills, founded upon the judgments and executions thereon returned unsatisfied. The judgments were rendered before a justice of the peace, and the executions ran only against personal property. It is, therefore, necessary to consider, in the first place, whether in the court of chancery such a suit could have been sustained without first docketing the judgment, so as to make it a lien on the defendant's real estate, if any he had, and issuing an execution on which that might be sold. In *Dix* v. *Briggs* (9 *Paige*, 595), it was decided by the chancellor that the legal remedy upon a justice's judgment was not exhausted until the judgment had been docketed in the county clerk's office, and an execution against real estate had been issued. In *Coe* v. *Whitbeck* (11 *Paige*, 42), the same proposition is maintained. In that case the chancellor intimates a doubt whether an averment, that the defendant, neither at the time of issuing the execution nor at the time of filing the bill, had any real estate or chattels real which could have been reached upon execution, might not suffice to entitle the plaintiff to maintain his bill, on a justice's judgment, and an execution against personal property only. The question is, however, left undetermined: the case not

requiring a decision upon the point. For the same reason its determination is not now necessary, because the averment of insolvency in the complaints now before us is made to refer to the time of the execution of the mortgages and assignments set out therein, and not to the time of the issuing of the executions or of the commencement of the suit. Upon these authorities, it is quite clear that this suit, in this aspect of it, would not have been sustained in the court of chancery.

It is argued, on the part of the plaintiff, that the requirement of an execution actually returned unsatisfied is matter of form merely; and that the substantial fact to make out which satisfactorily, that requirement was introduced, is made to appear in these complaints by averment; that under the Code, such an averment should be deemed sufficient, especially as the legal and equitable jurisdictions are now blended. To these arguments there are several answers. In the first place, the complaints contain no averment, either that at the time when the execution was issued, or at the time of the commencement of the suit, the defendants in the judgments had no property, real or personal. There is, therefore, no averment of that which, as it is contended, the return of an execution unsatisfied tends to prove. In the next place, it is clearly shown in *McElwain* v. *Willis* (9 *Wend.*, 548), that the actual return of an execution unsatisfied was essential to the maintenance of such a bill, both before and under the Revised Statutes; and tha the place of such an averment could not be supplied by an allegation of a total want of property. This rule, thus well established, is not directly changed by the Code of Procedure; and as the court of chancery required executions to be returned unsatisfied, when issued on its own decrees, before it would entertain creditors' bills founded upon them, I do not see that the union of legal and equitable jurisdiction in the supreme court furnishes any reason for depart-

ing from the well established rule. In this aspect, therefore, the plaintiff cannot sustain his suit.

There was, however, another class of cases in which a judgment creditor might resort to a court of equity. Where the property was, in its own nature, subject to sale upon execution, and the creditor had obtained judgment and issued execution, and thus acquired a specific lien upon the property in question, but was prevented from obtaining satisfaction of his debt by some fraudulent or inequitable obstruction or embarrassment. In these cases, the aid of the court of chancery was sought in the execution of the legal process, so that the satisfaction, when obtained, was had by means of and through the instrumentality of the legal process alone. To entitle the party to this aid, it was incumbent upon him to show that there was property on which he had obtained a legal lien, either by virtue of his judgment docketed, if real estate, or by virtue of an execution issued, if chattels; so that, the obstructions being removed by the action of the court of equity, he could pursue his legal remedy with effect. (*McElwain* v. *Willis, before cited.*) The complaints now before us do not show that any property of the judgment debtors was of that kind that could be sold upon execution, except what was actually levied upon by the sheriff. As to this portion of the property, it appears by the complaints that it had been taken out of the custody of the sheriff and sold by the defendants other than the judgment debtors. It does not, therefore, affirmatively appear that any determination of the court, in respect to the validity of the incumbrances or assignments which had been made of the property levied on, would have enabled the plaintiffs to subject it to sale for the satisfaction of their claims. In this aspect, therefore, the complaints cannot be sustained.

The remaining view upon which the suits are sought to be supported is, that they are to be regarded as instituted to procure an equitable administration of the assets of an

Crippen *against* Hudson.

insolvent partnership among the creditors of the firm. The answer to this position is, that to entitle the plaintiff to interfere adversely in the administration of the partnership assets, he must, in the first place, acquire an equitable lien by exhausting his legal remedy, or in some other way. A creditor at large has no standing in court upon such a question. Before the case of *Dillon* v. *Horn et al.*, (5 *How. Pr. R.* 35), no such doctrine was ever started. That case seems to have proceeded upon the supposed analogy between its circumstances and those which appeared in *Innes* v. *Lansing* (7 *Paige*, 583), while it is quite apparent that Chancellor Walworth put the decision in that case upon the plain distinction which exists between a limited partnership under our statute and a common mercantile partnership. The question is well considered in *Greenwood* v. *Brodhead* (8 *Barb.*, 593), by Justice Parker, and he arrives, after considering all the cases, at the conclusion that a lien must be obtained upon the property, before the creditor can invoke the equitable powers of the court to control its administration.

I am, therefore, of opinion that upon neither of the grounds taken by the plaintiff can these suits be maintained, and that the judgments appealed from should be affirmed.

CRIPPEN, J., took no part in the decision.

Judgment affirmed.[1]

---

[1] See *Reubens* v. *Joel, post,* 488. *Greenwood* v. *Brodhead,* 8 Barb. 593. *Willetts* v. *Vandenburgh,* 34 Ibid. 424. *Allyn* v. *Thurston,* 53 N. Y. 622. *Estes* v. *Wilcox,* 67 Ibid. 264. *Lewishon* v. *Drew,* 15 Hun 467. *North American Insurance Co.* v. *Graham,* 5 Sandf. 197. *Brooks* v. *Stone,* 19 How. Pr. 395.